IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GREAT PLAINS LIVESTOCK
CONSULTING, INC., a Nebraska
Corporation,

              Plaintiff,

vs.

MOUNTAIN WEST AG SERVICES,
INC., a Montana Corporation, and
LUCAS MILLER,

              Defendants.

4:26-CV-3052

MEMORANDUM AND ORDER

The plaintiff, Great Plains Livestock Consulting, Inc., is suing a former employee, Lucas Miller, and Miller's current employer, Mountain West Ag Services, Inc., for breach of contract. Filing 1. The defendants jointly move to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Filing 7. The motion will be granted.

## I. STANDARD OF REVIEW

When jurisdiction is challenged on a pretrial motion to dismiss, and the Court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *Hawkeye Gold, LLC v. China Nat'l Materials Indus. Imp. And Exp. Corp.*, 89 F.4th 1023, 1030 (8th Cir. 2023). The evidence is viewed in the light most favorable to the plaintiff, and the Court resolves factual conflicts in that party's favor. *Id.*; *Kaliannan v. Liang*, 2 F. 4th 727, 733 (8th Cir. 2021); *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023); *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). But if the defendant controverts or denies jurisdiction, the

plaintiff still carries the burden of proof. *See Hawkeye Gold*, 89 F.4th at 1030; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008); *see also Hawkeye Gold*, 89 F.4th at 1030.

## II. BACKGROUND

Great Plains is a Nebraska corporation based in Eagle, Nebraska. *See* filing 1-1 at 1, 2. It "provides livestock consulting and premix services, including proprietary premix formulations used in feed products." *See* filing 14 at 2. Miller began working for Great Plains in 2011 as a consultant, subject to a non-compete "for a period of two years following termination of employment." Filing 1-1 at 2; filing 9-2 at 1. The contract does not contain a forum-selection clause, but does contain a choice-of-law provision designating Nebraska law as governing the contract. *See generally* filing 1-1.

When he first began working for Great Plains, Miller lived and worked in Missouri; he later moved to Montana. The plaintiff specifically hired Miller to perform unspecified "services" outside of Nebraska, primarily in Missouri and Montana. *See* filing 9-2 at 1. He rarely visited Nebraska and never performed work in the state, *see* filing 9-2 at 2, though he "regularly communicated" with Great Plains representatives, *see* filing 15-1 at 2. Miller was also a minority owner of Great Plains, and filed Nebraska Schedule K-1 N forms. Filing 15-1 at 2. Great Plains issued Nebraska W-2s to Miller. *Id.*

Miller provided consultant services to companies in Montana, including Mountain West, throughout his employment with Great Plains. Filing 9-2 at 2. Mountain West is a Montana corporation, based in Garneill, Montana.

2

Mountain West manufactures "a variety of nutrition and animal health products that provide supplemental nutrition to livestock feed for customers in and around" Montana. Filing 9-1 at 1. It purchases ingredients for its livestock feed from Ralco Agriculture, a Minnesota company. Filing 9-1 at 2; *see also* filing 15-1 at 2. Ralco purchases premixes from Great Plains, and sells them to customers like Mountain West. *See* filing 15-1 at 12.

In the spring of 2024, Miller asked about employment opportunities at Mountain West, suspecting his employment with Great Plains would soon end. *See* filing 9-1 at 2; filing 9-2 at 2. Mountain West hired Miller as a Sales Manager. Filing 9-1 at 3. According to the complaint, Mountain West "entice[d]" Miller to violate his employment contract, specifically the non-compete provision, with Great Plains. Filing 1-1 at 2.

Later in 2024, Great Plains negotiated a deal with Miller and Mountain West: Great Plains would not enforce the non-compete in Miller's employment contract if Mountain West agreed to sell "only manufactured feed using [Great Plains'] premixes." Filing 1-1 at 2. Great Plains alleges that Mountain West and Miller complied with the 2024 agreement for at least some time, but, since "some point in 2025, no Ralco payment reports . . . demonstrate Miller's or Mountain West's compliance" with the alleged contract. Filing 15-1 at 2; *see* filing 1-1 at 2. Great Plains alleges that Mountain West and Miller breached the agreement "by failing to continue purchasing the [Great Plains'] premixes and by marketing and selling their competitors [sic] premixes to [Great Plains'] detriment." Filing 1-1 at 2.

## III. DISCUSSION

The defendants jointly assert neither are subject to personal jurisdiction in Nebraska. Great Plains argues jurisdiction is warranted in Nebraska

3

because both defendants sought out business agreements with a Nebraska company (Great Plains), and the defendants should have reasonably anticipated being haled into a Nebraska court. Filing 14 at 5.

In order to satisfy the Due Process Clause of the Fourteenth Amendment and justify personal jurisdiction, a defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[1] *E.g., Hawkeye Gold*, 89 F.4th at 1032. Courts recognize two kinds of personal jurisdiction: general and specific. General jurisdiction exists where a defendant can be said to be "essentially at home" in the forum state. *See id.*; *Wade v. Pottawattamie Cnty*, 100 F.4th 991, 993 (8th Cir. 2024). Or, a defendant may be subject to "specific jurisdiction" if it purposely directs its activities at residents of the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. *E.g., Kendall Hunt*, 74 F.4th at 930.

### 1. GENERAL JURISDICTION

Great Plains appears to argue that the defendants are subject to general jurisdiction in Nebraska. *See* filing 14 at 5. However, general jurisdiction requires "continuous and systematic" contacts, extensive enough to "provide[] personal jurisdiction to courts within the state to hear any and all claims against a party." *Wade*, 100 F.4th at 993 (internal quotations omitted). Paradigmatically, general jurisdiction is limited to the place an individual defendant is domiciled, or where a company is either incorporated or has its

---

[1] Nebraska's long-arm statute extends to the fullest extent permitted by the Due Process Clause, so the inquiry into personal jurisdiction collapses into the due process analysis. *See Wade*, 100 F.4th at 993; *RFD-TV, LLC v. WildOpenWest Finance, LLC*, 849 N.W.2d 107, 114 (Neb. 2014).

principal place of business. *E.g., Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351, 358 (2021).

There's no indication that Miller or Mountain West can be considered "at home" in Nebraska. Miller has never been domiciled in Nebraska; he is a resident of Montana, and a former resident of Missouri. Filing 9-2 at 1. And Mountain West is a Montana company with its principal place of business in Montana. Filing 9-1 at 1. The only alleged contact(s) with Nebraska, according to Great Plains, is that the defendants entered into one or more contracts with Great Plains, a Nebraska company. This is insufficient to demonstrate either defendant had such continuous and systematic contacts with the state of Nebraska as to justify jurisdiction for any and all lawsuits against them. *Cf. Wade,* 100 F.4th at 993.

### 2. SPECIFIC JURISDICTION

A court may have personal jurisdiction over a defendant where the plaintiff's claims arise out of or relate to a defendant's particular contacts with a state. *See id.* Specific jurisdiction is satisfied where a defendant intentionally takes "some act" to "purposefully avail" itself of the benefits and protections of the forum state. *Id.; Ford Motor Co.,* 592 U.S. at 359. There is no "talismanic" or mechanical formula; whether jurisdiction exists turns on the particular facts of each case, with a focus on the relationship between the defendant, the forum, and the litigation. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 86-87 (1985); *Whaley,* 946 F.3d at 451 (citing *Walden v. Fiore,* 571 U.S. 277, 284 (2014)).

The Eighth Circuit uses a five-factor, totality-of-the-circumstances test to weigh those particular facts. *Kendall Hunt,* 74 F.4th at 930. Courts in this circuit consider: (1) the nature and quality of the defendants' contacts with the

state; (2) the quantity of those contacts; (3) the relation of the cause of action to those contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Id.* The contacts must be more than "random and fortuitous," but need not rise to the level of "continuous and systematic"—the threshold is "somewhere in between." *Wade,* 100 F.4th at 993; *see also Ford Motor Co.,* 592 U.S. at 359.

For contractual claims, personal jurisdiction is proper "where the defendant reaches out beyond one state and creates continuing relationships and obligations with citizens of another state." *Hawkeye Gold,* 89 F.4th at 1036 (quoting *Creative Calling Sols., Inc. v. LF Beauty Ltd.,* 799 F.3d 975, 980 (8th Cir. 2015)). Courts look to the "real object of the business transaction," and evaluate the parties' prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Creative Calling,* 799 F.3d at 980; *Burger King,* 471 U.S. at 479. The focus, again, is on the relationship between the defendant, the litigation, and the forum state— not the defendant and the plaintiff. *See Walden,* 571 U.S. at 284; *Whaley,* 946 F.3d at 452.

For example, the Eighth Circuit concluded a business purposefully availed itself of Iowa courts where it

> first contacted [the plaintiff] in Iowa to solicit its business, engaged in daily communications with [the plaintiff] for almost two years after contractual negotiations had concluded, shipped thousands of pre-production and production samples to Iowa pursuant to the contract, and remitted payments to [the plaintiff] in Iowa under the agreement.

799 F.3d at 981. Because the breach of contract claim was based on the delivery of defective samples to Iowa, the circuit court determined that the plaintiff's claim arose out of and related to the defendant's connection to Iowa, justifying jurisdiction. *Id.*

In contrast, Minnesota did not have personal jurisdiction over an international defendant who shipped samples of its products to the forum state and sent "numerous letters and faxes and made several phone calls to Minnesota in connection with" a contract with a Minnesota choice-of-law provision. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996). In *Digi-Tel*, the parties' contract, including where it was negotiated and where future delivery was contemplated, was "centered" outside of Minnesota, and the defendant "merely engaged in negotiations with a purchaser who happened to reside in Minnesota." *Id.* at 525. While a choice-of-law provision may reinforce a defendant's "deliberate affiliation" with a state, "it is insufficient in itself to confer jurisdiction." *Id.* at 523. Jurisdiction was therefore not proper. *Id.* at 525; *see also Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136-37 (8th Cir. 2015) (no personal jurisdiction over defendant whose only contact with the forum state was its business relationship with the plaintiffs).

Both Miller and Mountain West undoubtedly have *some* contacts with the state of Nebraska: Miller received paychecks from Nebraska, and occasionally communicated via phone and email with Great Plains representatives (though it's not clear those representatives were actually in Nebraska, *see* filing 15-1 at 2). And, both defendants allegedly agreed to sell the Nebraska company's products.

But neither Miller's employment contract nor the 2024 agreement contemplated any business directed *to* Nebraska. Miller's contracts with Great

Plains were not focused on commercial activity in Nebraska, except insofar as a Nebraska company expected to profit from Miller's activities. Miller never performed work in Nebraska and rarely visited the state. The evidence indicates Miller was hired to direct sales away from Nebraska and into *other* states.

The evidence does not show either of the alleged contracts were negotiated in Nebraska. The evidence does not indicate either defendant solicited Great Plains for its business. Additionally, the conduct that gave rise to the present lawsuit also occurred outside of Nebraska: To the extent Great Plains alleges Miller breached his employment contract by beginning to work for Mountain West, that breach occurred in Montana. The alleged breach of the 2024 agreement also happened outside of Nebraska (presumably in either Minnesota or Montana).

The state of Nebraska is not implicated in the parties' negotiations, the future consequences of the contracts, or the parties' actual course of dealings. The only term relating to Nebraska is a choice-of-law provision in Miller's employment contract, which is insufficient, standing alone, to confer jurisdiction. *Digi-Tel*, 89 F.3d at 523. Mountain West and Miller, at most, agreed to work with a third-party company, Ralco, in Minnesota, to sell Great Plains' premixes. By Great Plains' own evidence, the parties did not communicate with each other to fulfill the alleged contract; they only communicated with the third party. *See* filing 15-1 at 13-20. While the *effects* of the alleged contract and breach were felt in Nebraska, they were felt only by the plaintiff. This is insufficient to confer jurisdiction. *See Eagle Tech.*, 783 F.3d at 1136-37.

The defendants' minimal contacts with Nebraska are more than random or fortuitous, but the nature, quality, and quantity of those contacts, and their

relation to the cause of action, are insufficient to create the requisite "substantial connection" with the state. The other factors (the interest of the forum state and convenience of the parties) are neutral. Neither defendant purposefully availed itself of the laws of Nebraska, nor did either defendant reach out into Nebraska to exploit its market or enter into a contract "centered" there. *Cf. Ford Motor Co.*, 592 U.S. at 359. The plaintiff has failed to meet its burden of showing that the parties had a continuous, ongoing relationship with *the state of* Nebraska, and not just an ongoing relationship with a business that happened to be in Nebraska. This case will therefore be dismissed for lack of personal jurisdiction.

IT IS ORDERED:

1.    The defendants' motion to dismiss (filing 7) is granted.

2.    The plaintiff's complaint is dismissed without prejudice.

3.    A separate judgment will be entered.

Dated this 16th day of June, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

9